**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

NATASHA DAVIS,

Plaintiff,

v.

CHECKR, INC.,

Defendant.

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**FCRA, 15 U.S.C. § 1681 *et seq.***

Plaintiff Natasha Davis ("Plaintiff") brings this action on behalf of herself and all others similarly situated, seeking statutory and other damages against Defendant CHECKR, INC. ("Defendant" or "Checkr") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a putative class action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following duty on consumer reporting agencies: consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports.

4. This is particularly relevant in the context of consumer reports used for the assessment for employment, as criminal record information can be a significant factor impacting potential adverse action against a consumer applicant, causing devastating impacts on their ability to obtain employment and income.

5. Indicatively, the Consumer Financial Protection Bureau has issued multiple advisory opinions regarding reasonable procedures to ensure the accuracy of criminal information in background check reporting.[1]

6. As such, the FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

7. Defendant has produced and sold consumer reports concerning Plaintiff's and the proposed Class members' backgrounds that wrongfully and misleadingly reported criminal records on their consumer reports that are not properly associated with these consumers.

8. As a result of Checkr's wrongful reporting, Plaintiff and the Class members were damaged by, without limitation, suffering defamatory harm to their reputations, impediment to their ability to gain employment, and considerable stress and anguish.

9. Plaintiff, individually and on behalf of the Class members, seeks statutory and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

---

[1] See CFPB, *Advisory Opinion on Fair Credit Reporting: Name-Only Matching Procedures*, 86 FR 62468 (Nov. 10, 2021) (a consumer reporting agency using name-only matching criteria for public records searches does not use reasonably procedures to assure maximum possible accuracy); CFPB, *Advisory Opinion on Fair Credit Reporting; Background Screening*, 89 FR 4171 (Jan. 23, 2024) (a consumer reporting agency who does not report existing/accurate disposition information does not use reasonable procedures to assure maximum possible accuracy).

## PARTIES

10. Plaintiff is a natural person and resident of Broward County in the State of Florida and qualifies as a "consumer" as defined and protected by the FCRA.

11. Defendant Checkr, Inc. is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce.

12. Defendant Checkr is a Delaware corporation that maintains its primary place of business at 1 Montgomery Street, San Francisco, California 94104.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of Florida and violated Plaintiff's rights under the FCRA in the State of Florida as alleged more fully below.

14. Jurisdiction is also proper pursuant to 28 U.S.C. § 1332(d)(2) as at least one member of the putative class and Defendant are citizens of different states and the amount in controversy exceeds $5,000,000.

15. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

16. On or around October 6, 2025, Plaintiff applied for employment with Uber.

17. Around that time, Uber contracted with Defendant Checkr to purchase a consumer background report on Plaintiff to assess Plaintiff's employability.

18. On or about October 6, 2025, Defendant Checkr provided Uber with a consumer background report on Plaintiff.

19. To Plaintiff's shock, Uber informed Plaintiff that the company was considering taking adverse action based on the results of the background check provided by Defendant.

20. 20. When Plaintiff reviewed the consumer report prepared by Defendant, Plaintiff was horrified to see that Defendant had reported multiple crimes that did not belong to Plaintiff.

21. Specifically, Defendant was misreporting the following cases out of Broward County: Case Nos. 25010972MM10A; 24099503TC10A; 24072260TC10A; 19000118MM30A; 15000863CF10A; and 12021144MM10A.

22. To be clear, these cases have nothing to do with Plaintiff, and instead belong to an individual named Natasha Francyne Belviveau.

23. Upon reviewing the case records on Broward County's publicly available court record database, it is readily apparent that these records are associated with an individual other than Plaintiff. Of the numerous identifiers listed, the docket reflects a different party name, different race, different address, and different date of birth than Plaintiff, among a number of other relevant identifiers.

24. Upon information and belief, the sole identifier associating Plaintiff with these cases was an inaccurate "alias" designation. Glaringly, even a cursory review of the dockets reveal that the actual defendant in these criminal cases was charged with providing a false name (Plaintiff's) when identifying herself to a law enforcement officer; a charge which Defendant itself included on Plaintiff's consumer report. The informations filed against the defendant expressly confirm that the criminal actions are brought against Natasha Francyne Beliveau.

25. By reporting Plaintiff as having been associated with crimes for which Plaintiff has no association, Defendant materially misrepresented Plaintiff's criminal history.

26. The CFPB has issued guidance explicitly indicating that associating a consumer with a criminal record based on name alone is an unreasonable procedure that presents an unnecessary and heightened degree of risk for error. *See Advisory Opinion on Fair Credit Reporting: Name-Only Matching Procedures*, 86 FR 62468 (Nov. 10, 2021). Further, the CFPB recently issued guidance affirming that "consumer reporting agencies must comply with their FCRA obligation to 'follow reasonable procedures to assure maximum possible accuracy' under section 607(b). In particular, a consumer reporting agency that reports public record information is **not** using reasonable procedures to assure maximum possible accuracy if it does not have reasonable procedures in place to ensure that… it includes any existing disposition information if it reports arrests, criminal charges, eviction proceedings, or other court filings." CFPB, *Advisory Opinion on Fair Credit Reporting; Background Screening*, 89 Fed. Reg. 4171 (Jan. 23, 2024) (*FCRA Background Screening AO*).

27. Moreover, "[a] violation is willful when it is inconsistent with 'authoritative guidance' from a relevant agency. As with any guidance issued by the CFPB on the FCRA… consumer reporting agencies risk liability… if they violate the FCRA in a manner described in this

advisory opinion, regardless of whether the consumer reporting agencies were previously liable for willful violations prior to its issuance." *Id.*

28. Because of the inaccurate and misleading information provided to her potential employer by Defendant, Plaintiff was defamed and suffered significant distress as a result of the precarious situation that Defendant's failures caused.

29. It is patently inaccurate and/or materially misleading to report adverse criminal records on Plaintiff's report that plainly do not belong to her.

30. Had Defendant not inaccurately and misleadingly reported mis-associated criminal records on Plaintiff's consumer report, Plaintiff would not have been defamed to her potential employer.

31. Upon information and belief, had Defendant not inaccurately and materially misleadingly reported mis-associated criminal records on Plaintiff's consumer report, Plaintiff would not have been forced to suffer the significant emotional distress associated with her employment denial.

32. Upon information and belief, Defendant has furnished thousands, if not tens of thousands of other individual's consumer background reports where it included criminal records that do not belong to the consumer as a result of procedures utilizing inadequate matching identifier criterion.

33. As evident by the inaccurate records on Plaintiff's report, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

34. It is further evident that Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides in its

consumer background reports by the fact that it wrongly associated these records with Plaintiff despite them not belonging to her.

35. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information, even where that information is plainly unassociated with the consumer, is more profitable than reporting less and potentially leaving information off of a consumer report.

36. For example, upon information and belief, Defendant allowed inaccurate and wrongly associated records to appear on Plaintiff's consumer report without first confirming the accuracy with the actual court records, which are readily and publicly available.

37. Defendant regularly seeks out and procures court case information with the intention of including it in the consumer reports it sells for profit.

38. Defendant knows or has reason to know the effect a consumer's criminal record report on the assessment of their suitability for employment applications.

39. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information itself, or from unreliable third-party vendors to repackage and sell in its own tenant screening products, while using drastically deficient matching procedures which result in the reporting of wrongly associated criminal records.

40. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

41. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

42. Upon information and belief, Defendant fails to use sufficient identifiers to ensure that the criminal record information it includes in its consumer reports is correctly associated with the consumer on whom the report concerns.

43. Defendant, a sophisticated tenant screening consumer reporting agency, is aware that criminal background information is often inaccurate or incomplete or capable of being associated with the wrong individual.

44. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for similar erroneous reporting.

45. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

46. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

47. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

48. Upon information and belief, Defendant knew that it maintains unreasonable procedures regarding its processes for matching consumers' information to criminal case information.

49. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

50. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

51. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

52. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

53. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

54. The injuries suffered by Plaintiff and the Class members as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

55. Defendant knows that its services are used to make significant consumer decisions.

56. Upon information and belief, Defendant know or should have known that employers make employment decisions based solely on the information contained in its consumer reports.

57. Upon information and belief, Defendant knew or should have known the negative impact that reporting a different person's criminal history was likely to have on that consumer's employment status.

58. Upon information and belief, Defendant purchases public record information from third-party vendors.

59. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

60. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

61. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provide inaccurate, misleading, and incomplete records.

62. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

63. As a direct result of Defendant's conduct, Plaintiff and the Class members have been substantially hindered in their ability to gain employment and have been defamed by Defendant's inaccurate and complete reporting.

64. These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

65. At all times pertinent hereto, Checkr's conduct was willful and/or negligent, and carried out in reckless disregard for a consumer's rights as set forth under section 1681e of the FCRA. Accordingly, Plaintiff and the Class are entitled to statutory and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

66. As a direct and proximate result of the Defendant Checkr's willful and/or negligent refusal to assure maximum accuracy of consumer reports as mandated by the FCRA, Plaintiff and the Class members have been harmed in their daily lives, by the impact of the defamatory harm ensuing from Defendant's inaccurate reporting, as well as the damage to their ability to gain employment.

67. For example, Plaintiff's was wrongly painted as a criminal to her potential employer and forced into the emotional distress and anxiety due to the negative impact of

Defendant's incomplete and inaccurate reporting. Plaintiff suffered emotional distress along with embarrassment, frustration and annoyance because of the Defendant's actions.

## CLASS ALLEGATIONS

68. Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated.

69. The Class consists of the following:

> All natural persons residing in the United States on whom, from two years prior to the filing of this Complaint to the date a class is certified, Checkr furnished a consumer report containing criminal case record entries which do not belong to that person.

70. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

71. Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

72. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Class. Based on information and belief, the Class is comprised of at least hundreds, if not thousands or tens of thousands, of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

73. **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The primary common legal and factual questions are:

a. Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in preparing and selling consumer reports;

b. Whether Plaintiff and the Class members have been injured by Defendant's conduct;

c. Whether Plaintiff and the Class members have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and if so, the proper measure and appropriate formula to be applied in determining such damages and restitution; and

d. Whether Plaintiff and the Class members are entitled to declaratory and/or injunctive relief.

74. **Typicality**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent Class members.

75. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex consumer and class-action litigation. Plaintiff's counsel has prosecuted complex consumer class actions across the country.

76. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is

superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

77. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**COUNT I**
**Violation of the FCRA, 15 U.S.C. § 1681e**
**On behalf of the Class**

78. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-77 as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the Class.

80. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

81. Accordingly, Checkr was required to follow procedures to assure maximum possible accuracy of the consumer reports it prepared concerning Plaintiff and the Class. This

includes following procedures to prevent including criminal records on consumers' reports when the record is not attributable to that consumer, and following reasonable procedures for the matching of identifiers which would not create significant inaccuracy concerns.

82. However, Checkr failed to do so.

83. Were Checkr to follow procedures to assure maximum possible accuracy of the consumer reports it prepared concerning Plaintiff and the Class members, it would not be possible for it to report the conviction history of a different individual on Plaintiff's and the Class members' reports.

84. Moreover, if Checkr were meeting its obligation to follow procedures to assure maximum possible accuracy of the credit reports it prepares for Plaintiff and the Class members, it would have prevented this inaccurate information from being reported in the first place.

85. As a direct and proximate result of Checkr's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff and the Class have been harmed, as explained above.

## DEMAND FOR JURY TRIAL

86. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

Dated: January 15, 2026

By: /s/ Joseph Kanee, Esq.
Joseph Kanee, Esq.
MARCUS & ZELMAN, LLC
1508 SW 23 Street
Fort Lauderdale, FL 33135
786-933-2775
joseph@marcuszelman.com
*Attorney for Plaintiff*
*Natasha Davis and the Proposed Class*